**In the Matter of Honour B. GELSON, Bankrupt.**

**No. 45731.**

United States District Court, E. D. New York.

Oct. 4, 1954.

Honour B. Gelson, bankrupt, pro. per.

Lucien Nemser, New York City, for trustee.

RAYFIEL, District Judge.

Honour B. Gelson moves to resettle my order on mandate dated February 19, 1954.

She seeks to have stricken therefrom the paragraph reading as follows: "Ordered that Lucien Nemser recover from Honour B. Gelson, the sum of $170.65, less the sum of $25.00, heretofore awarded as costs to Honour B. Gelson, making a total of $145.65, and for the costs of the objecting creditor and that Lucien Nemser have judgment and execution against Honour B. Gelson for the sum of $145.65."

An examination of the mandate of the Court of Appeals, Gelson v. Rudin, 2 Cir., 200 F.2d 31, dated November 24, 1952, on which the order in question was entered, discloses that my orders of April 22, 1952, and June 2, 1952, were modified "by striking out the provision in each order which directs the bankrupt to pay or cause to be paid anything other than the expenses of the objecting creditor with costs taxed at the sum of $25.-00."

Under the mandate, therefore, there remained in each order the provision for the payment of the expenses of the objecting creditor. These expenses were itemized and taxed as costs on February 19, 1954, at $170.65.

The mandate is clear, and my order followed the mandate. Accordingly, the motion is denied.

**Euphime V. BERESLAVSKY**

v.

**The UNITED STATES.**

**No. 48722.**

United States Court of Claims

Oct. 5, 1954.

W. Brown Morton, New York City, for plaintiff. Pennie, Edmonds, Morton, Barrows & Taylor, New York City, were on the briefs.

T. Hayward Brown, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case is before us on the sole question of the validity of claim 1 of plaintiff's patent, which plaintiff alleges the defendant infringed. The question of infringement, however, is not before us at this time. Claim 1 reads:

"A low compression motor fuel, such as gasoline or kerosene, containing a compound belonging to the mesitylene group."

As explained in the specifications:

"This invention relates to the suppression of a fuel knock in a motor when a mixture of a low compression fuel, such as gasoline or kerosene, and air is burned under a relatively high compression."

A knock in an engine is caused by an uneven burning of the fuel and by its too rapid combustion. It is accompanied by overheating, increased vibration, and loss of power.

On motion of the parties, the court directed the Commissioner to report not only his findings of fact, but also his recommendation for a conclusion of law. The briefs before us are directed to the Commissioner's memorandum in support of his recommendation for the conclusion of law to be entered; the facts are not in dispute.

It is said that petroleum, wherever found, with only one or two exceptions, contains mesitylene and that, therefore, plaintiff's claim of "a low compression motor fuel, such as gasoline or kerosene, containing a compound belonging to the mestiylene group," claims nothing more than what already existed. However, it seems to us that the claim of the patent must of necessity be construed as meaning a motor fuel to which is added an amount of mesitylene in addition to that found in the gasoline produced from petroleum, both by distillation and by cracking. In short, it means adding more mesitylene than can be obtained from the gasoline itself.

This is necessarily true, because if not so construed, manifestly nothing had been invented and no patent would have issued on it. The inventor discovered the fact that mesitylene prevented knocking; a knock occurred in low compression gasoline when subjected to high compression and, therefore, the inventor said, add more mesitylene to the gasoline and the knock will be prevented.

A reference to the specifications demonstrates that this is what the claim meant. But before we quote the specifications we should notice the Commissioner's statement that the specifications may not be looked to if the claim is unambiguous, and his further statement that the claim is not ambiguous. We must disagree with the Commissioner. The question is, did the inventor mean to add to gasoline an amount of mesitylene which was not naturally present? The claim does not say specifically whether he does or not, although, as we said

above, we think this must be inferred; but since there is a doubt about this, the claim is ambiguous and we may turn to the specifications to resolve the doubt.

In the second paragraph of the specifications he says:

> "I have found that compounds of the mesitylene group, which includes the substance mesitylene, its amino-compounds and derivatives of the amino-compounds, suppress this fuel knock *when the fuel mixture is burned in the presence of one of these compounds.* * * *"
> [Italics ours.]

This would indicate an addition of mesitylene that was not found in the gasoline in its natural state. In the next paragraph he says:

> "In a commercial method of utilizing the invention one or more of these mesitylenes is *admixed* with or dissolved in the liquid fuel, * * *." [Italics ours.]

This, of course, means the addition of something to the gasoline.

The next paragraph makes this all the more plain:

> "The same result may be obtained by feeding one of the mesitylenes into the intake of the engine as by atomizing it therein or by feeding it into the combustion chamber of the engine prior to ignition."

When we look to the specifications, there seems to be no doubt but that the inventor had in mind the addition to the motor fuel of mesitylenes which were not naturally found in that fuel.

It is also said that plaintiff's patent is anticipated by the Taber and Essex patent. The Taber and Essex patent discloses a motor fuel consisting of gasoline modified by an additive consisting of solvent naphtha, comprised principally of xylenes, together with ethyl benzol, mesitylene and analogous benzol derivatives. Since mesitylene was present in the things which the Taber and Essex patent specified should be added to the gasoline, plaintiff's patent is said to be anticipated by it. We do not think this is correct.

The Taber and Essex patent says that the solvent naphtha to be added to the gasoline should be comprised "principally of xylenes," and then it adds: "together with ethyl benzol, mesitylene and analogous benzol derivatives." The principal thing which the Taber and Essex patent said should be added to the gasoline was a naphtha comprised principally of xylenes. The ethyl benzol, the mesitylene and the analogous benzol derivatives were merely "also-rans." The main horses in the race were xylenes; the ethyl benzol, mesitylene, and analogous benzol derivatives "also ran." The star of the cast was the xylene; the bit players were ethyl benzol, mesitylene, and analogous benzol derivatives. Plaintiff said nothing about the addition of xylenes and the rest, but only of mesitylene.

It is true that xylene and mesitylene are closely related; but they are different, as the Taber and Essex patent recognized, by mentioning principally xylene, but also mentioning, secondarily, mesitylene. If they were the same, both would not have been mentioned. The chemical formula for xylene reads: "$C_6H_4(CH_3)_2$." The formula for mesitylene is "$C_6H_3(CH_3)_3$."

Since Taber and Essex centered their attention on xylenes, and only mentioned mesitylene incidentally, whereas plaintiff centered his entire attention on mesitylene, it does not seem to us that the Taber and Essex patent anticipated plaintiff's patent.

It is also suggested that plaintiff's claim is fatally vague and indefinite, in that it does not specify to those skilled in the art the proportion of mesitylene to be used. We think this suggestion is well answered by plaintiff's brief, on page 16. It is there stated:

> "The patentee's discovery is not concerned with proportions. Like any other antiknock additive, the amount used is determined by the result desired. If it is desired to

render a fuel suitable for an engine having a 6 to 1 compression ratio effective in an engine having an 8 to 1 compression ratio, a greater amount will be added than if it is desired to make the fuel suitable for an engine having a 7 to 1 compression ratio. * * *"

It is like sweetening one's tea or coffee: you do it according to taste. Some people put one lump of sugar in their coffee; a person has been known to put as many as six. The result desired determines the amount of sugar; the result desired determines the amount of mesitylene.

In the specifications of the patent plaintiff says:

"By way of example, I may dissolve twenty grams of the diaminomesitylene in twenty cubic centimeters of ethyl alcohol and mix this solution into one gallon of gasoline. This proportion quantity of anti-knock substance will suppress a knock in present day automobile engines and generally will permit increasing the compression pressure of the engine about twenty pounds."

Plaintiff states how much mesitylene must be added to suppress a knock "in present day automobile engines," but evidently if the compression in such an engine goes higher, more mesitylene must be added; the higher the compression, the more mesitylene to be added.

It seems to us that the claim is definite enough, when read in connection with the specifications. It would be impossible to specify the exact amount unless the result desired was known, and the character of the gasoline used was known, because the mesitylene content of gasoline varies from field to field, as the findings show. Having been told that the addition of mesitylene would prevent a knock, any one skilled in the art by a little experimentation could readily determine the amount to be added.

We are of the opinion that the Patent Office was correct in issuing a patent (No. 1,713,589) to plaintiff covering his discovery that mesitylene in addition to that naturally found in gasoline would prevent a knock.

The case will be remanded to a commissioner for further proceedings not inconsistent with this opinion.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

LITTLETON, Judge, dissents.

**CHICAGO AND NORTH WESTERN RAILWAY COMPANY,**

v.

**THE UNITED STATES.**

No. 49291.

United States Court of Claims.
Oct. 5, 1954.

